**Gerald Anthony JOHNSON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–93–00570–CR.**

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1994.

Jacquelyn L. Snyder, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., C. Jeffrey Mulliner, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before CHAPA, C.J., and STONE and HARDBERGER, JJ.

STONE, Justice.

Defendant Gerald Anthony Johnson appeals his conviction by a jury for aggravated robbery with a deadly weapon. Punishment was assessed by the court at confinement for 20 years, with an affirmative finding of a deadly weapon. We affirm.

In his sole point of error, Defendant asserts that a witness' pre-trial identification of

Defendant was impermissibly suggestive, thereby tainting her in-court identification.

At 5:30 a.m. on the morning of March 26, 1993, Cherrie Griffen and Michael Price were working at a Whataburger in San Antonio. The doors were locked, but the lock did not work on the drive-through window. As Griffen walked around a corner in the building, she came face to face with a strange man armed with a gun. Both stood facing each other, each stunned at the other's presence. The robber then motioned for Griffen to come towards him, turned her around, placed his gun against her back, and had her call out to Price. Price looked up and saw what was happening. The robber told them to go into the walk-in freezer and stay there. Griffen and Price saw only the upper half of the man's face because he was wearing a hooded sweatshirt and a towel covered his mouth and the bottom of his nose.

After about fifteen minutes, Griffen and Price emerged from the freezer to find the robber gone. They called the police, their manager and their supervisor. The manner in which the robbery was committed suggested that it was someone familiar with the store. The man had opened Griffen's cash register, which could only be opened by pressing the "no sale" key. He apparently had not pressed any of the other keys, nor did it appear he had tried to break into the safe, which would have been fruitless.

After several employees arrived, Griffen described the robber to them. According to Griffen, "everyone" said it must be Defendant, who had worked at that store earlier. That day, the supervisor left a photocopy of Defendant's driver's license picture for Griffen to look at when she came to work that night. She covered up the part of the face that the robber had covered and exclaimed, "I'm one hundred percent positively sure this is the man who robbed me." Griffen kept the photo with her for one week until she was asked to identify the robber from a photo line-up of six pictures. Detective Gill testified that he included Defendant's photograph in the line-up because he was requested to do so by Griffen. Griffen once again identified Defendant. She also identified him in court.

Price also identified Defendant as the robber from the photo line-up and in court. After conducting a hearing to determine the admissibility of the pre-trial identifications, the trial court admitted both identifications.

Defendant urges this Court to adopt the standards laid down in *United States v. Snowadzki*, 723 F.2d 1427 (9th Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984), which interpreted the Fourth Amendment to the United States Constitution. The Fourth Amendment, however, applies to unreasonable searches and seizures, not to identification of a defendant.

■ Admission of an identification where the witness is shown only one person does not necessarily constitute a violation of due process. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Garza v. State*, 633 S.W.2d 508, 513 (Tex.Crim.App. 1981). A pretrial identification, even if suggestive, will be admissible if, under the totality of the circumstances, there does not exist a substantial likelihood of misidentification. *Jackson v. State*, 657 S.W.2d 123, 129–30 (Tex.Crim.App.1983). To obtain reversal on appeal, a Defendant must show by clear and convincing evidence that the complaining witness' testimony was irreparably tainted. *Herrera v. State*, 682 S.W.2d 313, 318 (Tex. Crim.App.1984), *aff'd*, *Herrera v. Collins*, —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). While the use of a single photograph is suggestive, it is not necessarily per se inadmissible. *Herrera v. State*, 682 S.W.2d at 318–19. In assessing the reliability of the pre-trial identification, the court must consider: (1) the witness' opportunity to view the criminal; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty; and (5) the time between the crime and identification. *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411; *Jackson v. State*, 657 S.W.2d at 129–30.

■ Texas law provides that even if a pretrial identification procedure is impermissibly suggestive, an in-court identification is still admissible if "the record clearly reveals that the witness' prior observation of the accused was sufficient to serve as an inde-

pendent origin for the in-court identification." *Jackson v. State,* 657 S.W.2d at 130; *accord Turner v. State,* 614 S.W.2d 144, 146 (Tex.Crim.App.1981). The factors to be considered in determining the origin of an in-court identification are: (1) the prior opportunity to observe the alleged criminal act; (2) the existence of any discrepancy between any description prior to the line-up and the defendant's actual characteristics; (3) any prior identification of another person; (4) the identification by picture of the defendant prior to the line-up; (5) failure to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the identification. *Turner v. State,* 614 S.W.2d at 146. Absent clear and convincing evidence that the in-court identification is tainted by improper pretrial procedures, the in-court identification is always admissible. *Jackson v. State,* 628 S.W.2d 446, 448 (Tex.Crim.App. 1982).

■ In the instant case, Griffen was able to see the suspect for about forty-five to fifty seconds, although it is difficult to determine from the record how much of that time she spent looking at the gun, and how much looking at the robber. Griffen had ample opportunity to view the suspect, however, because she was so close to him. Griffen was also paying close attention, since she realized the robber might kill her. Her description of the robber matched Defendant, although we note that her description was not very detailed. She described the robber as wearing a gray hooded sweatshirt underneath a jacket, jeans, and a towel which covered the lower half of his face. Price's description matched this, and both stated that the Defendant was the same man. Griffen was very sure each time she saw Defendant, both in photographs and in person, that he was the robber, stating that she was "one hundred percent positively sure", she "could identify him anywhere," and, "There is no doubt in my mind that Gerald Anthony Johnson is the man who robbed me." This is in sharp contrast to the situations in *Coleman* and *Proctor,* where the complainants said that they were not sure they could have identified the respective defendants if they had not been shown pictures beforehand. *Coleman v. State,* 505 S.W.2d 878, 880 (Tex.Crim.App.

1974); *Proctor v. State,* 465 S.W.2d 759, 763 (Tex.Crim.App.1971). Further, Griffen first identified Defendant as the robber just one day after the robbery, and then identified him out of the photo line-up merely one week later. Price also chose Defendant from the photo line-up, and he apparently had not seen the earlier picture.

■ As the trier of fact at the hearing to determine the admissibility of the in-court identification, the trial court was free to believe or disbelieve any or all of the testimony adduced. *See Pyles v. State,* 755 S.W.2d 98, 111 (Tex.Crim.App.), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988) (hearing on voluntariness of confession); *Carrasco v. State,* 712 S.W.2d 120, 122 (Tex. Crim.App.1986) (hearing on motion to suppress).

While it is better for witnesses to simply ask for a picture of their suspect to be included in a photo line-up, in this case there was sufficient evidence for the trial court to decide that no substantial likelihood of misidentification existed. We also note that the police did not have anything to do with the fact that Griffen's supervisor showed her a photograph of Defendant. Defendant's sole point of error is overruled. The judgment of the trial court is affirmed.